John SALPAS aka J.P. Wallace,
Appellant,

v.

The STATE of Texas, Appellee.

No. 08-81-00167-CR.

Court of Appeals of Texas,
El Paso.

Oct. 27, 1982.

Appellant's Rehearing Denied
Nov. 24, 1982.

H. Tati Santiesteban, Santiesteban & Juarez, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., John Calhoun, Asst. Dist. Atty., El Paso, for appellee.

Before PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is an appeal from a conviction for possession of tetrahydrocannabinol. The court assessed punishment at ten years confinement. We affirm.

In Grounds of Error Nos. One through Three, Appellant challenges the overruling of his motion to suppress and the admission of evidence produced by what he contends was an illegal search. Appellant rented Storage Locker No. 18 from Alpha Self Storage Warehouse of El Paso. Rent in the amount of $26.00 was to be paid on the first of each month. Appellant failed to pay rent for August, 1980. Mrs. Hill attempted to contact him at the address on his rental contract, the Plaza Hotel, but was advised there was no J.P. Wallace in residence. On August 12, having received no payment or communication, Mrs. Hill placed an additional lock on the door to the storage locker. On August 20, 1980, still without word or payment, she observed that her lock had been removed entirely, and Appellant's lock had been cut and left hanging on the door. She entered the storage locker and observed what at first appeared to be numerous trash bags. Upon further examination, she found suitcases and glass jars containing a dried leafy substance which she suspected was marihuana. She telephoned the business owner and, in accordance with his instructions, placed another lock on the miniwarehouse and notified the police. El Paso Police Department narcotics officers arrived and were advised of the rental arrears and Mrs. Hill's reentry actions. She then admitted them to the storage locker. The officers found approximately three pounds of marihuana, ten and one-half pounds of hashish in disc-shaped blocks, a twenty-five pound scale, a compressor and a 300 pound hydraulic steel press, the circular pressure plate of which contained hashish residue. The controlled substances were in glass containers, plastic bags, an open suitcase and one zippered suitcase. The bulk of the substance was in plain view, and the distinct odor of marihuana was present throughout the storage locker.

Relying upon landlord-tenant law, Appellant contends that Mary Hill had no authority to consent to the police entry into the storage locker. Appellant's property analysis is without merit. He entered a written contract with the lessor in which the latter reserved a right of reentry upon lessee's default. The terms of the agreement required rental payment on the first of each month. Appellant was in default when payment was not made on August 1. There was no history of acceptance of late payments constituting waiver of rights by the lessee. Lessor attempted to contact the Appellant several times prior to entry. In addition, Mrs. Hill placed a cover lock on the storage room on August 12, without further intrusion. It was only on August 20, upon finding her lock missing and the tenant's lock cut, that she reentered the leased premises. Her peaceful reentry under the terms of the contract was valid despite the absence of prior actual default notice to the lessee-Appellant. Tex.Rev. Civ.Stat.Ann. Article 5222 (Vernon 1962); *Gulf Oil Corporation v. Smithey,* 426 S.W.2d 262 (Tex.Civ.App.—Dallas 1968, writ dism'd).

After initial entry to insure the security of the warehouse and any contents, Mrs. Hill discovered the controlled substances. Appellant's rights with regard to the storage locker were limited by the conditions of the rental contract. The agreement expressly excluded storage of contraband as a consensual use of the premises. This provided a further basis for the lessor to effect reentry and her consent to entry by the police. In *Gillett v. State*, 588 S.W.2d 361 (Tex.Cr.App.1979), the Court of Criminal Appeals affirmed the conviction of a shoplifter who was observed concealing an item of clothing while in a fitting room within the store. The mirror on the fitting room displayed a warning of surveillance by female security personnel. While a customer enjoyed some degree of reasonable expectation of privacy within the enclosed room, such expectation was limited by use conditions reasonably imposed by the business establishment.

■ Furthermore, we point out that consideration of Fourth Amendment rights involves more than an exercise in property law. The constitutional privilege protects people not places. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The ultimate criteria is whether there was a violation of the claimant's legitimate or reasonable expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), *reh. denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83. In making this determination, property rights are relevant but are not the sole determinant. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

■ In this case, the rental contract excluded the use of the mini-warehouse for contraband storage. It also established the terms of the contract with regard to payment of rent and the consequences of failure to pay. From this contract, Appellant should have been aware of the likelihood of landlord reentry. The Fourth Amendment reasonable expectation of privacy revolves about the common understanding and expectations of society, not the technicalities of contract or property law as perceived by attorneys. Given this contract and the failure to pay the rental on time, no lay member of this society would have reasonably considered the locker to be sancrosanct. The initial entry was by the lessor, a private party, acting upon the terms of the private contract and not as an agent for or at the behest of the State. We are not stating that there was no violation here because there was a private party search. The evidence was not removed by Mrs. Hill to a public or plain view location. The officers were admitted to the premises by her. Rather, her action was clearly within the reasonable contemplation of the parties to the contract and consequently presents no violation of the Fourth Amendment doctrine expressed in *Katz* and *Rakas*. The cases cited by Appellant did not involve any contractual default by the lessees. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), *reh. denied*, 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed.2d 303; *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961).

■ Finally, in addition to the reasons stated above, even if this action could have been construed as a violation of Appellant's Fourth Amendment rights, we would not find the situation appropriate for application of the exclusionary rule. Appellant challenged the search on constitutional grounds only, placing no reliance on Texas statutes. As stated in *United States v. Williams*, 622 F.2d 830, 840–847 (5th Cir. 1980), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981), the exclusionary rule is not intended to enhance the pursuit of truth or justice in the case in which it is invoked. It is a non-constitutional, judicially imposed deterrent of future police misconduct. As such it perverts the fairness of our criminal justice system to apply it in situations where the law enforcement agents acted reasonably and in good faith. [I]t is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private

property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical.... [W]e ought not to bow to them in the fair administration of the criminal law.

*Jones v. United States,* 362 U.S. 257, 266, 80 S.Ct. 725, 733, 4 L.Ed.2d 697, 705 (1960). The above language was quoted for the defendant's benefit in *Stoner,* 376 U.S. at 488, 84 S.Ct. at 892, 11 L.Ed.2d at 860. Here, we find it equally applicable in assessing the reasonableness of police conduct and the unsuitability of exercising the exclusionary rule. As previously stated, the initial intrusion in this case was by a private citizen. At the direction of the business owner, she summoned the police. Prior to police entry, both detectives ascertained that the consenting party was the manager of the premises, that the tenant was in arrears, that several attempts to contact him had proved fruitless, that the locks on the building had been cut and one removed, and that the lessor had effectuated reentry under a written contract. There is no question that the officers acted under an actual, reasonable, and good faith belief that their entry was with the consent of one who had authority to do so. Further inquiry or legal research in the area of property law would not be reasonable to expect from the police officers.

The dissenters in *Williams* proposed an additional rationale for the exclusionary rule, that being the maintenance of judicial integrity in monitoring the manner in which evidence is acquired for introduction in court. Although deciding the case on principles of standing, the Supreme Court in *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), *reh. denied,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1172, disposed of the judicial integrity rationale for the exclusionary rule. The court recognized the "considerable harm that would flow from indiscriminate application of an exclusionary rule" in language consistent with Part II of the opinion in *Williams* and with our decision in this case. We conclude that Grounds of Error Nos. One, Two and Three are without merit, and they are overruled.

■ In Grounds of Error Nos. Five and Six, Appellant challenges the introduction and consideration of hearsay testimony by Mrs. Hill concerning a post-search telephone conversation which she had with the Appellant. Both grounds are without merit. On September 2, 1980, Appellant telephoned Mrs. Hill. This was followed by additional calls and one visit to her office between September 2 and 27. He asked Mrs. Hill about his property in the storage locker, specifically inquiring about the removal of his 300 pound press. He also admitted visiting the warehouse prior to the search and cutting the lock. He further inquired whether or not she had turned him in to the narcotics office. The content of the telephone conversation, as well as his responses to "J.P." and "John," established his identity as the caller. The testimony was clearly admissible as voluntary admissions and declarations of his knowledge as to the locker, the controlled substances and associated paraphernalia.

■ Grounds of Error Nos. Four, Seven, Eight and Nine variously challenge the sufficiency of the evidence. Appellant admitted cutting the lock on the storage room between August 12 and the August 20 search. He acknowledged ownership of the steel press, which contained residue and was clearly employed in converting the marihuana to hashish. A fingerprint identified as that of the Appellant was found on a glass jar containing marihuana. The evidence was sufficient to support Appellant's conviction even under the circumstantial evidence standard applied in this case. Grounds of Error Nos. Four, Six, Seven and Eight are overruled.

The judgment is affirmed.