IN RE PRESTON JEROME WHITE, RELATOR



NO. 07-02-0477-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JANUARY10, 2003



______________________________




IN RE PRESTON JEROME WHITE, RELATOR






_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION (2)


 By this original proceeding, relator Preston Jerome White, proceeding pro se and
informa pauperis, seeks a writ of mandamus to compel the Lubbock County District Clerk
to provide him with a copy of the clerk's record to prepare a pro se brief in response to an
Anders (3) brief filed by appellate counsel. Under applicable principles of law, the petition
for writ of mandamus is dismissed as moot.

 The Lubbock County District Clerk has notified this Court that on December 11,
2002, a copy of the clerk's record was forwarded to appellant. Thus, this proceeding is
moot. 

 Don H. Reavis

 Justice

 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Tex. R. App. P. 47.4..
3. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).


 
 
 
 MicrosoftInternetExplorer4
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-08-0356-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 

 OCTOBER 27, 2010



 

 



 

 

JOHNNY ANDREW SANCHEZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 286TH DISTRICT
COURT OF HOCKLEY COUNTY;

 

NO. 07-03-6387; HONORABLE PAT PHELAN, JUDGE



 

 



 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, Johnny
Andrew Sanchez, was convicted by a jury of possession of a controlled substance
(cocaine) in an amount of four grams or more but less than 200 grams.[1]  He was sentenced to seven years confinement
and assessed a fine of $10,000.  On
appeal, Appellant asserts:  (1) the
evidence at trial was legally and factually insufficient to establish that he
knowingly possessed the cocaine; (2) the trial court erred by denying his
motion to suppress and, alternatively, (3) the trial court erred by refusing to
instruct the jury on the provisions of article 38.23 of the Texas Code of
Criminal Procedure.[2]  We affirm.[3]

Background

            On February
16, 2006, Monty Peck rented a three bedroom, residential dwelling to Appellant
and Chrisann Orosco pursuant to a joint Residency Tenancy Agreement
(Agreement).  The Agreement provided that
"[t]he term of the lease [was] a periodic tenancy commencing 12:00 noon on
and continuing on a month to month basis until the Landlord or the Tenant
terminates the tenancy."  The tenancy ran from the 16th to the 16th of
each month and rent was due on or before the 16th of each month.  Until August of that year, either Appellant
or Orosco paid the rent in cash on or before the 16th of each month.

            Prior to the rent being due for the
period running from August 16, 2006 to September 16, 2006, Peck received a call
from Orosco saying "they" were moving out on August 16 because they
had purchased a house.  Thereafter,
neither tenant offered to pay the rent and no rent payments were made.   On August 21, Peck entered the house to
inspect the premises to determine whether cleaning and repairs were necessary.  Inside the house, he found partial pieces of
a dresser, broken lamps, and trash bags filled with garbage.  He found no food, clothing, or any indication
anyone was living there.  When he went
outside to inspect the yard, he discovered that the lock on the storage shed
had been changed, and he did not have a key to fit the lock.

            After returning to the house to
complete his inspection, Peck discovered a key on a shelf in the laundry
room.  He returned to the shed, tried the
lock with the new key and it opened. 
Inside the storage shed, he found several five gallon drums of oil,
truck batteries, and tools.  In an open
box, he discovered an open, Enfamil baby formula can containing a clear plastic
bag of white powder, digital scales and, in the bottom of the box, a number of
small green envelopes.  He called the
police and, after the officers arrived, he signed a form consenting to a search
of the storage shed.  The police searched
the shed and recovered the box and its contents.  

            




Motion to Suppress

            Appellant
filed a motion to suppress all evidence seized by the police.  At the suppression hearing, Appellant
asserted that his landlord's entry upon the premises, his subsequent discovery
of cocaine in the storage shed, and his consent permitting the police to search
the premises was illegal because Appellant retained a leasehold interest in the
property.  Appellant contended that,
because his landlord did not give him thirty days notice prior to terminating
his lease[4] and/or Appellant did not
give Peck notice that he was leaving
the premises on August 16th, his landlord had no authority to enter the
premises.    

            The State countered that the
landlord's consent was proper because Appellant had abandoned his leasehold
interest prior to his landlord's consent and subsequent search.  The State maintains that the landlord
properly entered the premises per the Agreement's terms.[5] The trial court ruled that,
prior to August 21, Appellant had abandoned the property and overruled Appellant's
motion.  

            Trial

            Peck's
testimony at trial largely mirrored that given at the suppression hearing.  He testified that the Agreement required
thirty days notice before either party could terminate the lease.  He further testified that, after August 16, he
sent a letter to Appellant and Orosco indicating they owed three weeks prorated
rent or $487.50 because they only gave a week's notice before vacating on
August 16.  Peck deducted the prorated
rent and repair expenses from their deposit. 


            Betty Modgling Steinhauser, a DPS
latent print examiner, testified that two fingerprints belonging to Appellant
were found on the bottom of the Enfamil can, and Scott Williams, a DPS forensic
scientist, testified that the substance found in the Enfamil can was 140 grams
of cocaine.

            Orosco testified that the storage
shed had a door that opened into the alley behind their house and someone could
have accessed the storage shed from the alley. 
She also testified their baby was given Enfamil formula and Appellant
would prepare the baby's bottles.  She
denied that she or Appellant ever used drugs or dealt drugs.  Regarding the lease, she testified that rent
was due on the 16th of each month.[6]  She further testified she never entered the
storage shed nor had she been close enough to notice whether a new lock had
been installed on the shed door.  She
also testified that she called Peck a week or two before they moved out of the
house and told him they were moving. 
When she and Appellant moved out, she testified they took everything
worth taking.  

            Peck subsequently testified as a
rebuttal witness for the State.  He
indicated that the back door to the shed opening into the alley was barricaded
by a piece of lumber sitting in brackets bolted to the shed's wall.  He testified that the back door was barricaded
when he leased the property to Appellant and when he re-entered on August
21.  He also testified that, when he
leased the property, the storage shed was empty.  

            Jury Charge

            At the charge conference, Appellant
tendered an article 38.23 instruction asserting that the evidence at trial had
raised a fact issue whether Peck's consent to search the shed was valid.[7]  The trial court overruled the request and
instructed the jury.  Thereafter,
Appellant was convicted of possession of a controlled substance (cocaine) in an
amount of four grams or more but less than 200 grams, sentenced to seven years
confinement, and assessed a fine of $10,000. 
This appeal followed.

Discussion

            Appellant
asserts the evidence is legally and factually insufficient because the State
failed to show that Appellant exercised care, custody, or control over the cocaine
located in the storage shed or that he had knowledge the substance in the
Enfamil can was cocaine.  He next asserts
the trial court erred in denying his motion to suppress because, under the
Texas Property Code, Orosco's notice that they were vacating the premises on
August 16 did not terminate their leasehold interest until September 2 (thirty
days later).  Therefore, Peck's entry
onto the property on August 21st and his subsequent consent to a search of the
storage shed by law enforcement officers violated Appellant's continuing
leasehold interest.  Finally, Appellant asserts
the trial court erred by denying his article 38.23 instructions because there
was a fact issue whether he had abandoned the premises or the lease was
terminated on August 21.




            I.          Legal and Factual Sufficiency

            A.        Standard of Review

            Heretofore
appellate courts have struggled with the distinction between legal and factual
sufficiency of the evidence challenges. 
The Texas Court of Criminal Appeals has recently held that the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt is the standard set forth
in Jackson v. Virginia.  See Brooks v. State, No. PD-0210-09,
2010 WL 3894613 (Tex.Crim.App. Oct. 6, 2010) (plurality op.)[8]  Under
that standard, in assessing the sufficiency of the evidence to support a
criminal conviction, this Court considers all the evidence in the light most
favorable to the verdict and determines whether, based on that evidence and
reasonable inferences to be drawn therefrom, a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.   Jackson
v. Virginia, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

            B.        Applicable
Law

To
support the verdict rendered in this case, the State was required to prove that
Appellant knowingly possessed a controlled substance, to-wit: cocaine, in an
amount of four grams or more but less than 200 grams.  To prove possession, the State was
required to show that Appellant (1) exercised Aactual care, custody, control, or management@ of the substance and (2) knew the
matter possessed was contraband.  See
' 481.102(38).  See also Tex. Penal Code Ann. ' 1.07(39) (Vernon Supp. 2008); Poindexter
v. State, 153 S.W.3d 402, 405-06 (Tex.Crim.App. 2005).  

When, as
here, the accused does not have actual possession of the controlled substance
or exclusive possession of the locale where the controlled substance was found,
it cannot be concluded or presumed that the accused had possession over the
contraband unless there are additional independent facts or circumstances that
tend to connect or link[9]
the accused to the knowing possession of the contraband.  Poindexter,
153 S.W.3d at 406; Evans v. State, 202 S.W.3d 158, 161-62 (Tex.Crim.App.
2006); Allen v. State, 249 S.W.3d 680, 691 (Tex.App.BAustin 2008, no pet.).  

A link is
a fact or circumstance which generates a reasonable inference that the
defendant knew of the contraband's existence and exercised control over
it.  Lair
v. State, 265 S.W.3d 580, 600 (Tex.App.--Houston [1st Dist.] 2008, pet.
ref'd).  The evidence demonstrating such
links may be direct or circumstantial.  Brown v. State, 911 S.W.2d 744, 747
(Tex.Crim.App. 1995).    

Numerous
nonexclusive factors have been recognized as contributing to an evaluation of
whether an accused is linked to the contraband.  See Triplett v. State,  292
S.W.3d 205, 208 (Tex.App.--Amarillo 2009, pet. ref'd).  Those links include, but are not
limited to: (1) whether the contraband was in plain view or recovered from an
enclosed place or container; (2) whether the defendant was the owner of the
premises or had the right to possess or control the place where the contraband
was found; (3) whether the contraband was conveniently accessible to the
defendant; (4) whether the defendant had a special connection to the
contraband; and (5) whether any forensic evidence (e.g., fingerprints, DNA,
etc.) connects the defendant to the contraband or its container.  See id. 
See also Evans, 202 S.W.3d at 162 n.12; Figueroa v. State,
250 S.W.3d 490 (Tex.App.BAustin 2008, pet. ref=d), cert. denied, No. 08-7719,
2009 WL 425291 (U.S. Tex. Feb. 23, 2009). 









There is
no set formula that an appellate court can use to determine if there are
sufficient links to support an inference of knowing possession of drugs.  Taylor v. State, 106 S.W.3d 827, 831
(Tex.App.BDallas 2003, no pet.).  Each case must be examined according to its
own facts on a case-by-case basis.  Roberson
v. State, 80 S.W.3d 730, 736 (Tex.App.BHouston [1st Dist.] 2002, pet. ref=d). 
A factor that contributes to sufficiency in one situation may be of
little or no value under a different set of facts.  Id. 
 Moreover, the number of links
is not as important as the combined logical force of all the evidence tending
to link the accused to the contraband.  Evans,
202 S.W.3d at 162, 166.

            




C.        Analysis

            Viewing
the evidence in a light most favorable to the verdict, the evidence at trial
showed that Appellant leased a house including the storage shed where the
controlled substance was found.  When
Appellant moved into the house the shed was empty.   After Appellant
vacated the premises, the landlord discovered a new deadbolt on the door of the
storage shed and he discovered a key that unlocked that deadbolt inside the
house.  After unlocking the deadbolt, the
landlord entered the shed and observed, in an open box, an Enfamil baby formula
can.  In the can was a clear plastic bag
containing a white powdery substance later identified as 140 grams of
cocaine.  Digital scales and numerous,
small green plastic bags were also located in the box with the cocaine.  Appellant's fingerprints were on the Enfamil
can.  

            From
this evidence there are at least three factors supporting a reasonable
inference that Appellant knew of the contraband's existence and exercised
control over it: (1) the place where the cocaine was found was not open to the
public, but was previously leased to Appellant, (2) the presence of other drug
paraphernalia, not present before Appellant leased the premises, and (3) Appellant's
fingerprints on the container in which the drugs were found.  Further, Enfamil was the brand of baby formula
consumed by Appellant's child and the cocaine was in plain view on entry into
the shed.  This evidence sufficiently links
Appellant to the controlled substance and establishes, to the requisite level
of confidence, that a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Appellant's first issue is overruled.

            II.         Motion
to Suppress

            A.        Standard of Review

            The
appropriate standard for reviewing a trial court's ruling on a motion to
suppress is bifurcated, giving almost total deference to the trial court's
determination of historical facts while reviewing the trial court's application
of the law de novo.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000) (citing Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997)).  See
Hudson v. State, 247 S.W.3d 780, 784 (Tex.App.--Amarillo 2008, no
pet.).  In this case, the trial court did
not make explicit findings of historical fact, so we review the evidence in a
light most favorable to the trial court's ruling.  Carmouche,
10 S.W.3d at 327-28.  If the trial
court's decision is correct on any theory of law applicable to the case, it
will be sustained.  Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App. 2003), cert. denied, 541 U.S. 974, 124 S.Ct.
1883, 158 L.Ed.2d 469 (2004).  In
addition, the trial judge is the sole and exclusive trier of fact and judge of
the credibility of the witnesses and their testimony at a suppression
hearing.  See Torres v. State, 182 S.W.3d 89, 902 (Tex.Crim.App. 2005).     

            B.        Consent

            The
Fourth Amendment to the United States Constitution forbids unreasonable
searches and seizures by government officials. 
O'Hara v. State, 27 S.W.3d
548, 550 (Tex.Crim.App. 2000) (citing Minnesota
v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)).[10]  Although warrantless searches are generally presumed
to be unreasonable, there are recognized exceptions.  Wiede
v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007) (citing Maryland v. Dyson, 517 U.S. 465, 466,
119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). 
A well-established exception to the warrant and probable cause
requirements of the Fourth Amendment is a search based on consent.  Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Reasor v. State, 12 S.W.3d 813, 817
(Tex.Crim.App. 2000).  

            To
be valid, consent must be voluntary; Harrison
v. State, 205 S.W.3d 549, 552 (Tex.Crim.App. 2006), and consent must come
from someone who has authority over the property.  See
Georgia v. Randolph, 547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208
(2006).[11]  That said, consideration of Fourth Amendment
rights involves more than an exercise in property law.  Salpas
v. State, 642 S.W.2d 71, 73 (Tex.App.--El Paso 1982, no pet.).  See
Chapman v. United States, 365 U.S. 610, 616-17, 81 S.Ct. 776, 5 L.Ed.2d 828
(1961).  "'It is unnecessary and
ill-advised to import into the law surrounding the constitutional right to be
free from unreasonable searches and seizures subtle distinctions . . . [in] . .
. the body of private property law,' and the Supreme Court [has] made it clear
for a long time that courts 'ought not bow to them in the fair administration
of criminal law.'"  Spring v. State, 626 S.W.2d 37, 41
(Tex.Crim.App. 1981) (quoting Jones v.
United States, 362 U.S. 257, 266-67, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).  "The ultimate criteria is whether there
was a violation of the claimant's legitimate or reasonable expectation of
privacy."  Salpas, 642 S.W.2d at 73 (citing Rakas v. Illinois, 439 U.S. 128, 58 L.Ed.2d 387 (1978)).[12]  "In making this determination, property
rights are relevant but are not the sole determinant."  Id. (citing
United States v. Salvucci, 448 U.S.
83, 65 L.Ed.2d 619, 100 S.Ct. 2547 (1980). 
"[T]he Fourth Amendment protects people, not places."  Katz v.
United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).    

            Further,
"[w]hen the police take possession of property that has been abandoned
independent of police misconduct, no seizure occurs under the Fourth
Amendment."  Swearingen v. State, 101 S.W.3d 89, 101 (Tex.Crim.App. 2003).  Abandonment of property occurs if: (1) the
defendant intended to abandon the property,[13]
and (2) his decision to abandon the property was not due to police misconduct.  See
McDuff v. State, 939 S.W.2d 607, 616
(Tex.Crim.App. 1997).  See also Brimage v. State, 918 S.W.2d 466,
507 (Tex.Crim.App.) (op. on reh'g en banc),
cert. denied, 519 U.S. 838, 117 S.Ct.
115, 136 L.Ed.2d 66 (1996).[14]  Moreover, when a defendant voluntarily
abandons property, he lacks standing to contest the reasonableness of the
search of the abandoned property.  McDuff, 939 S.W.2d at 616.  

            C.        Analysis

            The dispositive issue here, and at
the suppression hearing, involves Peck's ability to lawfully consent to the
warrantless search of the storage shed. 
Whether consent is valid is a question of fact to be determined from all
the circumstances.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002) (citing Ohio v. Robinette, 519 U.S. 33, 40, 117
S.Ct. 417, 136 L.Ed.2d 347 (1996)).

            At
the suppression hearing, Peck testified that he rented a house to Appellant and
Orosco on February 16, 2008, pursuant to an Agreement.  The tenancy was a month-to-month tenancy
beginning on the 16th of each month.  The
Agreement also provided that, if at any time during the lease the premises were
abandoned, Peck had the option to re-enter the premises and consider any
personal property belonging to the tenants, that remained, as abandoned
property to be disposed in any manner Peck deemed proper.

            Prior
to the rent being due for the month running from August 16 to September 16, Peck
received a call from Orosco indicating that she and Appellant were moving out
on August 16 because they had bought a house. 
No one made any rent payments after the call and there is no evidence
there were any further communication between either Appellant or Orosco and Peck.  When Peck entered the house on August 21, he
found partial pieces of splintered furniture and trash bags filled with garbage.  There was no food or clothing in the house--no
evidence anyone was living there.[15]  

            Under
these circumstances, the trial court could reasonably find that Appellant had
voluntarily abandoned the house and Peck was authorized to act pursuant to the
Agreement's provision related to abandonment. 
The Court of Criminal Appeals decision in Swearingen, supra, is particularly instructive.   In Swearingen, the defendant and his wife
agreed to live with his parents and notified their landlord on December 24, 1998,
that they had to move.  On January 6,
1999, Officer Mock went to the rental property and discovered the landlord had
just cleaned the rent trailer out in order to rent it to another party.  The landlord showed Officer Mock where he had
thrown out the trash and the officer discovered evidence incriminating the
defendant in a crime.  The Swearingen Court held that the incriminating
evidence was admissible at trial because defendant had abandoned his trailer
prior to January 6, 1999, and lacked standing to complain about any search of
the rent trailer or the trash removed from the trailer on that date.  Id.
at 101.

 
          Because Appellant vacated
the premises and ceased paying rent, we also find Appellant abandoned the
rental house prior to August 21 and, under the lease, Peck was authorized to
re-enter the house and storage shed, dispose of the contents, and consent to a
search of the premises by the police.  Vacating
the premises coupled with cessation of rent payments constitutes
abandonment.  See Lucky v. Fidelity Union Life Insurance Company, 339 S.W.2d 956,
959 (Tex.Civ.App.--Dallas 1960, no writ). 


            The
trial court did not abuse its discretion in denying Appellant's motion because
Appellant had no standing to challenge the search.[16]  On August 21, Appellant had no possessory
interest in the rent property--notice was given that Appellant was vacating the
premises, Appellant vacated the premises, and no rent had been paid for the
tenancy period of August 16 through September 16. 

            Appellant
contends that his tenancy did not terminate until September 2 because his
landlord did not give Appellant thirty days notice prior to terminating the
Agreement.  Appellant asserts that,
because the Agreement was governed by the Texas Property Code, more
specifically section 91.001, he was due thirty days notice before any
termination by his landlord could take place. 
See Tex. Prop. Code Ann. §
91.001(a), (b) (Vernon 2007).  However,
here, Orosco gave Peck notice that they would be moving out on August 16 and
would not, and in fact did not, pay any rent thereafter.  Prior to August 21 when he re-entered the
property, there is no evidence of record that Peck took any steps to terminate
the Agreement or otherwise bring the Agreement to a premature end.  Rather, the record supports the premise that,
because Appellant vacated the premises without paying any further rent,
Appellant abandoned the premises.  See Lucky, 339 S.W.2d at 959. [17]  Accordingly, Appellant's second issue
is overruled.

            III.        Jury
Instruction

            A.        Standard of Review

            When reviewing the record for jury
charge error, we must first determine whether error actually occurred and, if
so, whether sufficient harm resulted from the error to require reversal of the
conviction.  Rodriguez v. State, 239 S.W.3d 277, 280 (Tex.App.--Amarillo 2007,
no pet.) (citing Hutch v. State, 922
S.W.2d 166, 170-71 (Tex.Crim.App. 1996).  


            B.        Article
38.23 Instruction

            Article
38.23 prohibits the use of any evidence against an accused in a criminal trial
if the evidence "was obtained by an officer or other person in violation
of any Texas state or federal law including the Texas and United States Constitutions.  Article 38.23(a).  Further, article 38.23 provides that, if the evidence
at the criminal trial raises an issue whether certain evidence was obtained in
violation of state or federal law, the jury shall be instructed to disregard
the evidence if it "believes, or has a reasonable doubt, that the evidence
was obtained in violation of [Article 38.23]."  Id.  

            Appellant
urges he was entitled to such an instruction because there was a factual issue
whether Appellant had abandoned the rental property and, consequently, whether Peck
had authority to permit law enforcement officers to search the premises
including the storage shed.  A jury instruction
under article 38.23 is required only when there is a factual dispute concerning
the legality of the seizure of evidence. 
Garza v. State, 126 S.W.3d 79,
85 (Tex.Crim.App. 2004); Rodriguez,
239 S.W.3d at 280.  Accordingly, we must
first determine whether there was a factual issue requiring an article 38.23
instruction. 

            In
support, Appellant asserts the following evidence raised such a fact
issue:  (1) there was a substantial
amount of personal property left in the storage shed; (2) the storage shed had
been fortified with a new deadbolt lock; (3) there was a car parked at the
house; and (4) Appellant was later billed for three weeks rent after he moved
out of the rent house.  

            Asserting
that Appellant did not abandon the rental property because he left personal
property in the storage shed after moving out of the house begs the question
whether the rental property was abandoned. 
Further, that Appellant may have fortified the shed door with a deadbolt
lock to protect his personal property
is not evidence Appellant did not intend to abandon the rental property.  Appellant
vacated the premises and ceased paying rent. 
At that point, Appellant no longer had any leasehold interest in the
rental property[18]
and, under the terms of the lease, Peck "[could] consider any personal
property belonging to [Appellant] and left on the Premises to also have been
abandoned."  In addition, when he
vacated the premises, he left a key to the deadbolt in the rent house which the
landlord found on re-entry.  Leaving a key
to the shed in the rent house after vacating the premises is consistent with an
intent to abandon the premises as well as the personal property in the shed.  Although there was a car parked at the
residence, the record reflects that Peck did not recognize the vehicle and
believed that it too had been abandoned. 
There was no evidence of record regarding the vehicle's ownership or how
long it had been parked on the premises. 


            Finally,
the evidence at trial does not support Appellant's assertion that he was billed
for an additional three weeks rent entitling him to possession of the rental
property after August 16.  Rather, Peck's
testimony at trial indicates he deducted three weeks rent from Appellant's
deposit as a penalty for abandoning the premises without giving thirty days
notice of termination as required by the Agreement.  Thus, while Appellant may contest the legal
effect of his actions, there was not a factual dispute presented with respect
to those actions.      

            Having
found no factual dispute, the trial court did not err in rejecting Appellant's
proposed jury instruction.  We overrule
Appellant's third issue. 

Conclusion

            The trial
courts judgment is affirmed.    

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  

Do not publish.

 











[1]See Tex. Health & Safety Code Ann. §
481.115(d) (Vernon 2010).  Although Appellant
was originally charged with the offense of possession of a controlled substance
with intent to deliver, Tex. Health & Safety Code Ann. § 481.112(d), the
jury found him guilty of this lesser included offense.





[2]See Tex. Code Crim. Proc. Ann. art.
38.23 (Vernon 2005).  Hereinafter, all
provisions of the Texas Code of Criminal Procedure will simply be cited as
"article ___" or "art. ___."





[3]In
this proceeding, the State did not file a brief nor request additional time to
do so.  Accordingly, we have conducted an
independent analysis of the merits of Appellant's claim of error, limited to
the arguments raised at trial by the State, to determine if there was
error.  See Little v. State, 246 S.W.3d 391, 397-98 (Tex.App.--Amarillo
2008, no pet.).  The decision to
independently review the merits of Appellant's issues should not be construed
as an approval of the State's failure to file a brief.  See Tex.
Code Crim. Proc. Ann. art. 2.01 (Vernon 2005) ("Each district attorney
shall represent the State in all criminal cases in the district courts of his
district and appeals therefrom . . . .") 
Although the State is not required to file a brief, the failure to do so
requires this Court to expend valuable judicial resources to determine the
parameters of the arguments presented to this Court for consideration.    





[4]The
Agreement provided that "[a]ny notice to terminate this tenancy must
comply with the Act."  Paragraph 28
of the Agreement states, "[i]f there is a conflict between any provision
of this Lease and the applicable legislation of the State of Texas (the 'Act'),
the Act will prevail and such provisions of the Lease will be amended or
deleted as necessary in order to comply with the Act."  Appellant asserts that "the Act"
refers to those provisions of the Texas Property Code that are applicable.  The State, having filed no response, has made
no objection.  Accordingly, for purposes
of this opinion, we accept Appellant's interpretation of this term of the
Agreement.  





[5]The
Agreement contained the following provision, in pertinent part:

25.  Abandonment.  If any time during the term of this Lease,
the Tenant abandons the Premises or any part of the Premises, the Landlord may,
at its option, enter the Premises by any means without being liable for any
prosecution for such entering, and without becoming liable to the Tenant for
damages or for any kind of payment of any kind whatsoever, and may, at the
Landlord's discretion, as agent for the Tenant, rent the Premises . . . for the
whole or any part of the then unexpired term, and may receive and collect all
rent payable by virtue of such renting. . . . If the Landlord's right of
re-entry is exercised following abandonment of the premises by the Tenant, then
the Landlord may consider any personal property belonging to the Tenant and
left on the Premises to also have been abandoned, in which case the Landlord
may dispose of all such personal property in any manner the Landlord will deem
proper and is relieved of all liability for doing so.  





[6]Appellant
asserts the rent was not due on any particular day of the month because
Appellant's copy of the Agreement did not expressly state that the lease ran
from the 16th to the 16th of each month. 
However, the Agreement was signed February 16 and stated "the Lease
is a periodic tenancy commencing at 12:00 noon on and continuing on a
month-to-month basis," Peck's copy of the Agreement indicated that the
rent was due on the 16th of each month, Appellant paid his rent on the 16th of
each month, receipts issued by Peck to Appellant were for  a one month period--16th to 16th, Peck
testified the tenancy ran from the 16th to the 16th of each month, and Orosco
testified that their rent was due on the 16th of each  month. 
Despite Appellant's assertion, all the evidence at trial indicated the
parties agreed the rent was due on the 16th of each month and the
month-to-month tenancy ran from the 16th to the 16th of each month.   





[7]Article
38.23, termed the "Texas exclusionary rule," generally prohibits the
admission of any evidence during a criminal trial that was obtained by a law
enforcement officer in violation of the laws of Texas, and provides that in
"any case where the legal evidence raises an issue hereunder, the jury shall
be instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained."  Article 38.23(a).





[8]While
we are not bound by a plurality decision, Pearson
v. State, 994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the
combined opinions of Judges Hervey and Cochran in Brooks as abandoning factual sufficiency as an evidentiary
sufficiency standard of review distinct from legal sufficiency.





[9]The Court of Criminal Appeals has
recognized that the term Aaffirmative@ adds nothing to the plain meaning of
Alink@ and now uses only the word Alink@ to evaluate evidence of
possession.  Evans v. State, 202
S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).





[10] U.S. Const. amend. IV.  See
Tex. Const. art. I, § 9; article 38.23.  





[11]It is a general rule that a landlord cannot normally
give effective consent to allow a search of a tenant's premises.  McNairy
v. State, 835 S.W.2d 101, 105 (Tex.Crim.App. 1991) (citing Chapman v. United States, 365 U.S. 610,
81 S.Ct. 776, 5 L.Ed.2d 828 (1961)).  It
cannot "be reasonably concluded that a tenant assumes a risk that his
landlord will consent to a government search of his home simply by signing a
lease."  Id.  See Spring v. State, 626 S.W.2d 37, 41 (Tex.Crim.App. 1981).  "While a landlord has access to his
tenant's property for some purposes, he certainly does not have mutual access
and control for most purposes."  Welch v. State, 93 S.W.3d 50, 54 (Tex.Crim.App.
2002).  





[12]While
the State has the burden to show that the person who consented to the search
had actual or apparent authority to consent; Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111
L.Ed.2d 148 (1990); Malone v. State,
163 S.W.3d 785, 797-98 (Tex.App.--Texarkana 2005, pet. ref'd), the defendant
bears the burden of establishing that he had a subjective expectation of
privacy that society is prepared to recognize as reasonable.  Granados
v. State, 85 S.W.3d 217, 223 (Tex.Crim.App. 2002).  See
Dawson v. State, 868 S.W.2d 363, 370 (Tex.App.--Dallas 1993, pet.
ref'd).  





[13]"Intent
may be inferred from circumstantial evidence such as acts, words, and the
conduct of appellant."  Guevara v. State, 152 S.W.3d 45, 50
(Tex.Crim.App. 2004) (citing Patrick v.
State, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995)).





[14]
Appellant makes no assertion that any decision to abandon his property was due
to police misconduct.





[15]Appellant
and Orosco executed the Agreement as joint tenants.  The Agreement provided that "[w]here
there is more than one Tenant executing this Lease, all Tenants are jointly and
severably liable for each other's acts,
omissions and liabilities pursuant to this Lease."   Although, technically, "under Texas
law, 'each owner in a co-tenancy acts for himself and no one is agent of
another or has any authority to bind him merely because of the
relationship'"; Brockelmann v.
Marynick, 788 S.W.2d 569, 572 (Tex. 1990), the trial court could reasonably
infer that Orosco's notice also encompassed Appellant because all of the
evidence at the hearing indicated Appellant and Orosco vacated the premises at
or about the same time prior to Peck's inspection on August 21 and no further
rent payments were made.      





[16]See Salpas v. State, 642 S.W.2d 71, 73 (Tex.App.--El
Paso 1982, no pet.) (where landlord took possession due to default in rent
payments, subsequent entry by police with landlord's permission did not violate
tenant's expectation of privacy).  See also Brimage, 918 S.W.2d at 507 (defendant failed to establish standing
to object to a search of his hotel room and contents when his suitcase was
found in his hotel room after check-out time and defendant had paid for a one
night stay); Bass v. State, 713
S.W.2d 782, 786 (Tex.App.--Houston [14th Dist.] 1986, no pet.) (where hotel
operator took possession of a guest's luggage after he failed to pay his bill,
held guest had no standing to challenge search); Ferris v. State, 640 S.W.2d 636, 638 (Tex.App.--El Paso 1982, pet.
ref'd) (failure of tenant of rental storage locker to pay the rental price gave
landlord the right to enter and consent to search of storage locker by police).






[17]The
result is the same whether or not Orosco spoke for Appellant when she informed
Peck the two were moving out.  If not,
then Appellant vacated the premises and ceased paying rent with no notice.  The result is also the same whether
Appellant's act of vacating the premises and cessation of rent is viewed as
"abandonment" or "termination."  "Under Texas law, if the tenant vacates
the premises and the landlord accepts possession, then an implied agreement to
terminate the lease has been established." 
In re Perry, 411 B.R. 368, 375
(Bankr. S.D.Tex. 2009).  Here, Peck
re-entered the premises, cleaned out the house, and placed its contents in or
near the dumpster in the alley--acts consistent with the notion that he was
exercising his rights under the Agreement and had regained possession of the
premises after Appellant vacated and was no longer paying rent.  Appellant's citation to M.L.C. Loan Corp. v. P.K. Foods, Inc., 541 S.W.2d 902
(Tex.Civ.App.--Beaumont 1976, no writ), is of no avail.  In M.L.C.
Loan Corp., the tenant attempted to make a full rent payment within a grace
period offered by the landlord but the landlord refused the payment and
declared the property abandoned before the grace period had expired.  Id.
at 903.  M.L.C. Loan Corp. is inapposite because, here, the landlord
received notice Appellant was vacating the leased premises, Appellant vacated
the premises, Peck offered no grace period and Appellant neither offered nor
paid any further rent after August 21.  





[18]Under
Texas property law, had Appellant continued to pay his rent after Orosco had
given notice that they were moving and he vacated the premises, he would have made
an election to exercise an implied option to renew his Agreement.  Pratt
v. Dallas County, 531 S.W.2d 904, 905 (Tex.App.--Waco 1975, writ ref'd
n.r.e.).  Appellant's Agreement did not
call for a formal notice to renew, thus his Agreement was impliedly renewed
when he paid the rent for the next month and the landlord accepted the rent
payment.  See id.  At that point, under
the terms of his Agreement, Appellant would have been entitled to thirty days
notice before Peck could terminate the leasehold.  In a month-to-month lease such as
Appellant's, either party to the lease is authorized to terminate the lease for
any reason upon one month's notice.  Struve v. Park Place Apartments, 923
S.W.2d 50, 52 (Tex.App.--Tyler 1995, pet. denied).