In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00057-CR**
**NO. 09-18-00058-CR**
**NO. 09-18-00059-CR**
**NO. 09-18-00060-CR**

_____

**DAVID VINCENT AKINS JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 16-08-09484-CR, 16-08-09485-CR,**
**16-08-09483-CR and 18-01-00145-CR**

**OPINION**

A jury convicted appellant David Vincent Akins Jr. of four charges of aggravated sexual assault of a child, and the trial judge assessed punishment at confinement for life in each case and ordered that the sentences would run consecutively. In his sole appellate issue, Akins challenges the denial of his motion

to suppress and the subsequent admission of evidence obtained from his laptop computer, which he asserts was unlawfully obtained because it was the result of a warrantless search of the laptop's contents. We affirm the trial court's judgments.

PERTINENT BACKGROUND

Before trial, Akins filed a motion to suppress, in which he asserted that the State violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as Article I, section 9 of the Texas Constitution and article 38.23 of the Texas Code of Criminal Procedure, and asked the trial court to suppress, among other things, all physical evidence. *See* U.S. Const. amends. IV, V, VI, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art. 38.23 (West 2018). The trial court did not rule on the motion before trial began.

At trial, David Barrow testified that he owned a trailer that he rented to tenants. Barrow explained that in 2015, his best friend approached him about renting the trailer to Akins and his family in March or April. According to Barrow, Akins agreed to pay monthly rent. Barrow explained that in September or October 2015, Akins and his family moved away from the trailer with their camper, but Barrow initially did not believe they were leaving permanently. Barrow testified that when the family left, Akins still owed rent for October.

2

In approximately November, Barrow saw water droplets on the window of the trailer, and he entered the trailer and discovered that a water main had burst and flooded the trailer. Barrow contacted Akins and told him of the damage, and Barrow explained that he expected Akins to fix the damage in the trailer and to pay past-due rent. Barrow explained that after that conversation, he was never able to reach Akins by phone again. Barrow testified that in November 2015, he put a notice on the door of the trailer and left it there for thirty days. Barrow explained that in January 2016, he decided to clean out the trailer. According to Barrow, furniture, baby items, and toys belonging to Akins and his family were still inside the trailer. Barrow explained that his friend, Troy Finney, helped him turn the water off and clean out the trailer.

According to Barrow, everything in the trailer was covered with mold, and he and Finney threw away most of the trailer's contents. Barrow explained that Finney found an old laptop in the trailer while they were cleaning. Finney asked Barrow if he could use it, and Barrow testified that he gave the laptop to Finney because he did not think Akins and his family intended to return. Barrow testified that he never saw Akins or Akins's family again. Barrow explained, "I figured [Akins] abandoned the place. We had a verbal agreement . . . that he would pay rent. And after four months and he had [paid] no rent, . . . I thought he abandoned the place."

Finney testified that he had communicated with Akins, and Akins informed Finney that he was "working on" returning to Barrow's trailer. Finney explained that while he was helping Barrow clean out the trailer, he saw a laptop, and he took it to use for his business. According to Finney, the laptop was locked, so he had it unlocked by a technician who came to his home. Finney testified that once the computer was unlocked and he turned it on, "[a]ll the folders, pictures, and stuff started popping up on the screen." Finney explained that multiple photos appeared when he opened one of the folders. Finney explained that he kept the laptop for approximately forty-eight hours before turning it over to the Tomball Police Department.

When the prosecutor asked Finney to describe the photographs, defense counsel objected and asserted that the trial court needed to rule on Akins's motion to suppress before hearing testimony about the contents of the laptop. Defense counsel explained that his motion concerned Fourth Amendment seizure issues. When the prosecutor asserted that the main issue was the legal question of whether Akins had abandoned the laptop, Akins's argument pertained to "the wrongful possession . . . of the laptop by private parties and also governmental intrusion."

At the hearing on the motion to suppress, the State took Detective Jason Smith of the Tomball Police Department on voir dire, and Smith explained that he opened

4

the laptop without a warrant or exigent circumstances after Finney brought it to the Tomball Police Department. Smith stated that he was told that the password-protected laptop was found at a trailer "that was previously occupied and that it was abandoned[.]" According to Smith, he met Finney, and Smith denied that Finney is a member of the Tomball Police Department or any other law enforcement agency. Smith explained that Finney had reason to believe the laptop had belonged to Akins. Smith stated that he clicked on a folder labeled "Keep Out" and discovered "[n]umerous images of child pornography." Smith indicated that after he saw the images of child pornography, he took the computer to Harris County Digital Forensic Lab to be processed and analyzed, and he subsequently wrote arrest warrants for possession of child pornography.[1] At the conclusion of the hearing, the trial judge found that Akins had abandoned the laptop and there was no search or seizure of the property under the Fourth Amendment because Akins had no legitimate expectation of privacy in property he had already abandoned, and the trial judge denied the motion to suppress.

---

[1]Subsequent testimony indicated that graphic images of Akins sexually assaulting the victim were found on the laptop.

## AKINS'S SOLE ISSUE

In his sole appellate issue, Akins asserts that the evidence from the laptop should have been suppressed because it was unlawfully obtained. According to Akins, the seizure of his password-protected laptop without a warrant and absent exigent circumstances violated his constitutional rights. We review a trial court's ruling on a motion to suppress for abuse of discretion. *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We utilize a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts, but we review *de novo* the trial court's application of the law to the facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Because the trial court has the advantage of observing witnesses' demeanor during the testimony on a motion to suppress, we defer to the trial court's determination of the "credibility of the witnesses and the weight to be given their testimony." *Id*. at 855. In reviewing the trial court's decision, we review the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). When, as here, a trial court makes findings

6

of fact, we determine whether the evidence supports those fact findings. *Kelly*, 204 S.W.3d at 818.

"The purpose of both the Fourth Amendment and Article I, section 9 of the Texas Constitution is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *Rogers v. State*, 113 S.W.3d 452, 456-57 (Tex. App.—San Antonio 2003, no pet). To prevail on an alleged violation of the exclusionary rule, a defendant must demonstrate that he had a legitimate expectation of privacy in the property. *See* Tex. Code Crim. Proc. Ann. art. 38.23; *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). "The Texas exclusionary rule applies to illegal searches or seizures conducted by law enforcement officers or 'other persons,' even when those other persons are not acting in conjunction with, or at the request of, government officials." *Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007). The defendant must prove facts that establish a legitimate expectation of privacy. *Villarreal*, 935 S.W.2d at 138. To meet this burden, the accused generally must show "that by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and . . . that circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable." *Id.* (footnote omitted).

"Abandonment of property occurs if: (1) the defendant intended to abandon the property, and (2) his decision to abandon the property was not due to police misconduct." *Swearingen v. State*, 101 S.W.3d 89, 101 (Tex. 2003). When property has been abandoned before police take possession of it, there is no seizure under the Fourth Amendment. *Id.* Abandonment is primarily a question of intent, and the defendant's intent may be inferred from words spoken, acts done, and other objective facts, and the court should consider all relevant circumstances that existed when the alleged abandonment occurred. *Green v. State*, 971 S.W.2d 639, 642 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

"'The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily . . . relinquished his interest in the property [. . .] so that he could no longer retain a reasonable expectation of privacy'" as to the property when the search occurred. *Green*, 971 S.W.2d at 642 (quoting *Smith v. State*, 530 S.W.2d 827, 833 (Tex. Crim. App. 1975) (citations omitted)); *see also Matthews v. State*, 431 S.W.3d 596, 609 (Tex. Crim. App. 2014). No person can reasonably expect privacy in property he has abandoned. *Matthews*, 431 S.W.3d at 608. "[W]hen a defendant voluntarily abandons property, he lacks standing to contest the reasonableness of the search of the abandoned property." *Swearingen*, 101 S.W.3d at 101.

8

Citing *Riley v. California*, 573 U.S 373 (2014), Akins asserts that the U.S. Supreme Court has required "that law enforcement, absent exigent circumstances, must obtain a search warrant to seize information from locked, digital storage devices, including cell phones[.]" In his brief, Akins contends that because his personal computer was password protected and locked, "he had the highest expectation of privacy that anyone in this [c]ountry can have[.]" Akins cites section 72.101 of the Texas Property Code and asserts that this provision controls when personal property may be presumed to have been abandoned. *See* Tex. Prop. Code Ann. § 72.101(a) (West Supp. 2018) (providing that personal property is presumed to have been abandoned if, for more than three years, the owner's existence and location are unknown to the holder of the property, and no claim or act of ownership has been exercised by the owner). Akins also cites section 92.0081(a) of the Texas Property Code, which states that a landlord may not "remove furniture, fixtures, or appliances furnished by the landlord from premises leased to a tenant unless the landlord removes the item for a bona fide repair or replacement." *Id.* § 92.0081(a) (West 2014). Akins maintains that his intent regarding the laptop "must be framed within the context of the civil laws concerning abandonment of personal property and the protection of [a] tenant's property from wrongful[] seizure by a landlord."

9

Akins does not cite to any authorities applying sections 72.101 and 92.0081 of the Property Code to determining whether a defendant has abandoned property for purposes of the Fourth Amendment, nor is this Court aware of any cases that do so. The Court of Criminal Appeals has held that "'it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions . . . (in) the body of private property law,' and the [U.S.] Supreme Court has made it clear for a long time that courts 'ought not bow to them in the fair administration of the criminal law[.]'" *Spring v. State*, 626 S.W.2d 37, 41 (Tex. Crim. App. [Panel Op.] 1981) (quoting *Jones v. United States*, 362 U.S. 257, 266-67 (1960)). Rather, the ultimate criterion "is whether there was a violation of the claimant's legitimate or reasonable expectation of privacy." *Salpas v. State*, 642 S.W.2d 71, 73 (Tex. App.—El Paso 1982, no pet.). Property rights are relevant but not determinative because "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967); *Salpas*, 642 S.W.2d at 73; *see also McDuff v. State*, 939 S.W.2d 607, 616-17 (Tex. Crim. App. 1997) (declining to apply the Texas Abandoned Motor Vehicles Act in determining whether the appellant had abandoned a car). For all these reasons, we decline Akins's invitation to apply the provisions of the Texas Property Code to

our analysis of whether the trial court should have granted Akins's motion to suppress.

As discussed above, Akins asserts that *Riley* globally required law enforcement, absent exigent circumstances, to obtain a search warrant to seize information from locked, digital storage devices. In *Riley*, the defendant was stopped for a traffic violation, and he was eventually arrested for possession of firearms when an inventory search of his vehicle revealed firearms. *Riley*, 134 S.Ct. at 2480. When an officer searched Riley's person incident to arrest, the officer seized a smartphone from the pocket of Riley's pants. *Id*. The smartphone eventually made its way to the hands of a detective, who searched the phone for evidence regarding a shooting that had taken place a few weeks previously, and Riley was ultimately charged in connection with that shooting. *Id*. at 2480-81. Riley asserted that the warrantless search of his cell phone in the absence of exigent circumstances violated the Fourth Amendment. *Id*. at 2481. The Supreme Court explained that the case required it "to decide how the search incident to arrest doctrine applies to modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Id*. at 2484. In its analysis, the Supreme Court noted that many cell phones "are in fact minicomputers that also happen to have the capacity to be used as a

11

telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id*. at 2489. The *Riley* court held that "officers must generally secure a warrant" before searching a cell phone. *Id*. at 2485.

We conclude that *Riley* is distinguishable from the facts presented here. *Riley* did not involve the issue of whether the defendant had abandoned the device that was searched, and nothing in *Riley* indicates that the Supreme Court intended to always require that law enforcement officers, absent exigent circumstances, obtain a search warrant to seize information from locked, digital storage devices. In addition, we note that the Court of Criminal Appeals has held that a person loses a reasonable expectation of privacy in a cell phone if he abandons the phone. *State v. Granville*, 423 S.W.3d 399, 409 (Tex. Crim. App. 2014).

The trial judge heard evidence that Barrow rented the trailer to Akins and his family on a month-to-month basis beginning in March or April of 2015, and that in September or October of 2015, Akins and his family left without paying the rent that was currently due, and they never returned and never paid further rent. Moreover, the trial judge heard evidence that Barrow entered the trailer in November after seeing water droplets on the window, and he discovered that a water main had burst, and he informed Akins of the damage. The trial judge also heard evidence that

12

everything in the trailer was covered with mold, and Barrow discarded most of the trailer's contents. Barrow testified that he believed Akins had abandoned the trailer. The trial judge heard Finney testify that Akins said he was "working on" returning to the trailer, but Akins had not returned to the trailer when Finney helped Barrow clean the trailer. Lastly, the trial judge heard evidence that Finney took the laptop to the police after discovering the photographs. On this record, viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not err by determining that Akins had abandoned the laptop and denying Akins's motion to suppress. *See Kelly*, 204 S.W.3d at 818. Akins did not demonstrate that he had a legitimate expectation of privacy in the laptop. *See Matthews*, 431 S.W.3d at 608-09; *Swearingen*, 101 S.W.3d at 101; *Villarreal*, 935 S.W.2d at 138; *Green*, 971 S.W.2d at 642; *see also Katz*, 389 U.S. at 351 (1967); *Salpas*, 642 S.W.2d at 73; *see also McDuff*, 939 S.W.2d at 616-17. Accordingly, we overrule Akins's sole issue and affirm the trial court's judgments.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

13

Submitted on January 18, 2019
Opinion Delivered March 6, 2019
Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.