NO. 07-08-0356-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL D

 OCTOBER 27, 2010

 JOHNNY ANDREW SANCHEZ, APPELLANT

 v.

 THE STATE OF TEXAS, APPELLEE

 FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

 NO. 07-03-6387; HONORABLE PAT PHELAN, JUDGE

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, Johnny Andrew Sanchez, was convicted by a jury of
possession of a controlled substance (cocaine) in an amount of four
grams or more but less than 200 grams.[1] He was sentenced to seven
years confinement and assessed a fine of $10,000. On appeal,
Appellant asserts: (1) the evidence at trial was legally and
factually insufficient to establish that he knowingly possessed the
cocaine; (2) the trial court erred by denying his motion to suppress
and, alternatively, (3) the trial court erred by refusing to instruct
the jury on the provisions of article 38.23 of the Texas Code of
Criminal Procedure.[2] We affirm.[3]

 Background

 On February 16, 2006, Monty Peck rented a three bedroom,
residential dwelling to Appellant and Chrisann Orosco pursuant to a
joint Residency Tenancy Agreement (Agreement). The Agreement provided
that "[t]he term of the lease [was] a periodic tenancy commencing
12:00 noon on and continuing on a month to month basis until the
Landlord or the Tenant terminates the tenancy." The tenancy ran from
the 16th to the 16th of each month and rent was due on or before the
16th of each month. Until August of that year, either Appellant or
Orosco paid the rent in cash on or before the 16th of each month.

 Prior to the rent being due for the period running from August
16, 2006 to September 16, 2006, Peck received a call from Orosco
saying "they" were moving out on August 16 because they had purchased
a house. Thereafter, neither tenant offered to pay the rent and no
rent payments were made. On August 21, Peck entered the house to
inspect the premises to determine whether cleaning and repairs were
necessary. Inside the house, he found partial pieces of a dresser,
broken lamps, and trash bags filled with garbage. He found no food,
clothing, or any indication anyone was living there. When he went
outside to inspect the yard, he discovered that the lock on the
storage shed had been changed, and he did not have a key to fit the
lock.

 After returning to the house to complete his inspection, Peck
discovered a key on a shelf in the laundry room. He returned to the
shed, tried the lock with the new key and it opened. Inside the
storage shed, he found several five gallon drums of oil, truck
batteries, and tools. In an open box, he discovered an open, Enfamil
baby formula can containing a clear plastic bag of white powder,
digital scales and, in the bottom of the box, a number of small green
envelopes. He called the police and, after the officers arrived, he
signed a form consenting to a search of the storage shed. The police
searched the shed and recovered the box and its contents.

Motion to Suppress

 Appellant filed a motion to suppress all evidence seized by the
police. At the suppression hearing, Appellant asserted that his
landlord's entry upon the premises, his subsequent discovery of
cocaine in the storage shed, and his consent permitting the police to
search the premises was illegal because Appellant retained a leasehold
interest in the property. Appellant contended that, because his
landlord did not give him thirty days notice prior to terminating his
lease[4] and/or Appellant did not give Peck notice that he was leaving
the premises on August 16th, his landlord had no authority to enter
the premises.

 The State countered that the landlord's consent was proper
because Appellant had abandoned his leasehold interest prior to his
landlord's consent and subsequent search. The State maintains that
the landlord properly entered the premises per the Agreement's
terms.[5] The trial court ruled that, prior to August 21, Appellant
had abandoned the property and overruled Appellant's motion.

 Trial

 Peck's testimony at trial largely mirrored that given at the
suppression hearing. He testified that the Agreement required thirty
days notice before either party could terminate the lease. He further
testified that, after August 16, he sent a letter to Appellant and
Orosco indicating they owed three weeks prorated rent or $487.50
because they only gave a week's notice before vacating on August 16.
Peck deducted the prorated rent and repair expenses from their
deposit.

 Betty Modgling Steinhauser, a DPS latent print examiner,
testified that two fingerprints belonging to Appellant were found on
the bottom of the Enfamil can, and Scott Williams, a DPS forensic
scientist, testified that the substance found in the Enfamil can was
140 grams of cocaine.

 Orosco testified that the storage shed had a door that opened
into the alley behind their house and someone could have accessed the
storage shed from the alley. She also testified their baby was given
Enfamil formula and Appellant would prepare the baby's bottles. She
denied that she or Appellant ever used drugs or dealt drugs.
Regarding the lease, she testified that rent was due on the 16th of
each month.[6] She further testified she never entered the storage
shed nor had she been close enough to notice whether a new lock had
been installed on the shed door. She also testified that she called
Peck a week or two before they moved out of the house and told him
they were moving. When she and Appellant moved out, she testified
they took everything worth taking.

 Peck subsequently testified as a rebuttal witness for the State.
 He indicated that the back door to the shed opening into the alley
was barricaded by a piece of lumber sitting in brackets bolted to the
shed's wall. He testified that the back door was barricaded when he
leased the property to Appellant and when he re-entered on August 21.
He also testified that, when he leased the property, the storage shed
was empty.

 Jury Charge

 At the charge conference, Appellant tendered an article 38.23
instruction asserting that the evidence at trial had raised a fact
issue whether Peck's consent to search the shed was valid.[7] The
trial court overruled the request and instructed the jury.
Thereafter, Appellant was convicted of possession of a controlled
substance (cocaine) in an amount of four grams or more but less than
200 grams, sentenced to seven years confinement, and assessed a fine
of $10,000. This appeal followed.

 Discussion

 Appellant asserts the evidence is legally and factually
insufficient because the State failed to show that Appellant exercised
care, custody, or control over the cocaine located in the storage shed
or that he had knowledge the substance in the Enfamil can was cocaine.
 He next asserts the trial court erred in denying his motion to
suppress because, under the Texas Property Code, Orosco's notice that
they were vacating the premises on August 16 did not terminate their
leasehold interest until September 2 (thirty days later). Therefore,
Peck's entry onto the property on August 21st and his subsequent
consent to a search of the storage shed by law enforcement officers
violated Appellant's continuing leasehold interest. Finally,
Appellant asserts the trial court erred by denying his article 38.23
instructions because there was a fact issue whether he had abandoned
the premises or the lease was terminated on August 21.

 I. Legal and Factual Sufficiency

 A. Standard of Review

 Heretofore appellate courts have struggled with the distinction
between legal and factual sufficiency of the evidence challenges. The
Texas Court of Criminal Appeals has recently held that the only
standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt
is the standard set forth in Jackson v. Virginia. See Brooks v.
State, No. PD-0210-09, 2010 WL 3894613 (Tex.Crim.App. Oct. 6, 2010)
(plurality op.)[8] Under that standard, in assessing the sufficiency
of the evidence to support a criminal conviction, this Court considers
all the evidence in the light most favorable to the verdict and
determines whether, based on that evidence and reasonable inferences
to be drawn therefrom, a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

 B. Applicable Law

 To support the verdict rendered in this case, the State was
required to prove that Appellant knowingly possessed a controlled
substance, to-wit: cocaine, in an amount of four grams or more but
less than 200 grams. To prove possession, the State was required to
show that Appellant (1) exercised (actual care, custody, control, or
management( of the substance and (2) knew the matter possessed was
contraband. See ( 481.102(38). See also Tex. Penal Code Ann. (
1.07(39) (Vernon Supp. 2008); Poindexter v. State, 153 S.W.3d 402, 405-
06 (Tex.Crim.App. 2005).

 When, as here, the accused does not have actual possession of the
controlled substance or exclusive possession of the locale where the
controlled substance was found, it cannot be concluded or presumed
that the accused had possession over the contraband unless there are
additional independent facts or circumstances that tend to connect or
link[9] the accused to the knowing possession of the contraband.
Poindexter, 153 S.W.3d at 406; Evans v. State, 202 S.W.3d 158, 161-62
(Tex.Crim.App. 2006); Allen v. State, 249 S.W.3d 680, 691
(Tex.App.(Austin 2008, no pet.).

 A link is a fact or circumstance which generates a reasonable
inference that the defendant knew of the contraband's existence and
exercised control over it. Lair v. State, 265 S.W.3d 580, 600
(Tex.App.--Houston [1st Dist.] 2008, pet. ref'd). The evidence
demonstrating such links may be direct or circumstantial. Brown v.
State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).

 Numerous nonexclusive factors have been recognized as
contributing to an evaluation of whether an accused is linked to the
contraband. See Triplett v. State, 292 S.W.3d 205, 208 (Tex.App.--
Amarillo 2009, pet. ref'd). Those links include, but are not limited
to: (1) whether the contraband was in plain view or recovered from an
enclosed place or container; (2) whether the defendant was the owner
of the premises or had the right to possess or control the place where
the contraband was found; (3) whether the contraband was conveniently
accessible to the defendant; (4) whether the defendant had a special
connection to the contraband; and (5) whether any forensic evidence
(e.g., fingerprints, DNA, etc.) connects the defendant to the
contraband or its container. See id. See also Evans, 202 S.W.3d at
162 n.12; Figueroa v. State, 250 S.W.3d 490 (Tex.App.(Austin 2008,
pet. ref(d), cert. denied, No. 08-7719, 2009 WL 425291 (U.S. Tex. Feb.
23, 2009).

 There is no set formula that an appellate court can use to
determine if there are sufficient links to support an inference of
knowing possession of drugs. Taylor v. State, 106 S.W.3d 827, 831
(Tex.App.(Dallas 2003, no pet.). Each case must be examined according
to its own facts on a case-by-case basis. Roberson v. State, 80
S.W.3d 730, 736 (Tex.App.(Houston [1st Dist.] 2002, pet. ref(d). A
factor that contributes to sufficiency in one situation may be of
little or no value under a different set of facts. Id. Moreover,
the number of links is not as important as the combined logical force
of all the evidence tending to link the accused to the contraband.
Evans, 202 S.W.3d at 162, 166.

C. Analysis

 Viewing the evidence in a light most favorable to the verdict,
the evidence at trial showed that Appellant leased a house including
the storage shed where the controlled substance was found. When
Appellant moved into the house the shed was empty. After Appellant
vacated the premises, the landlord discovered a new deadbolt on the
door of the storage shed and he discovered a key that unlocked that
deadbolt inside the house. After unlocking the deadbolt, the landlord
entered the shed and observed, in an open box, an Enfamil baby formula
can. In the can was a clear plastic bag containing a white powdery
substance later identified as 140 grams of cocaine. Digital scales
and numerous, small green plastic bags were also located in the box
with the cocaine. Appellant's fingerprints were on the Enfamil can.

 From this evidence there are at least three factors supporting a
reasonable inference that Appellant knew of the contraband's existence
and exercised control over it: (1) the place where the cocaine was
found was not open to the public, but was previously leased to
Appellant, (2) the presence of other drug paraphernalia, not present
before Appellant leased the premises, and (3) Appellant's fingerprints
on the container in which the drugs were found. Further, Enfamil was
the brand of baby formula consumed by Appellant's child and the
cocaine was in plain view on entry into the shed. This evidence
sufficiently links Appellant to the controlled substance and
establishes, to the requisite level of confidence, that a rational
trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Appellant's first issue is overruled.

 II. Motion to Suppress

 A. Standard of Review

 The appropriate standard for reviewing a trial court's ruling on
a motion to suppress is bifurcated, giving almost total deference to
the trial court's determination of historical facts while reviewing
the trial court's application of the law de novo. Carmouche v. State,
10 S.W.3d 323, 327 (Tex.Crim.App. 2000) (citing Guzman v. State, 955
S.W.2d 85 (Tex.Crim.App. 1997)). See Hudson v. State, 247 S.W.3d 780,
784 (Tex.App.--Amarillo 2008, no pet.). In this case, the trial court
did not make explicit findings of historical fact, so we review the
evidence in a light most favorable to the trial court's ruling.
Carmouche, 10 S.W.3d at 327-28. If the trial court's decision is
correct on any theory of law applicable to the case, it will be
sustained. Armendariz v. State, 123 S.W.3d 401, 404 (Tex.Crim.App.
2003), cert. denied, 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469
(2004). In addition, the trial judge is the sole and exclusive trier
of fact and judge of the credibility of the witnesses and their
testimony at a suppression hearing. See Torres v. State, 182 S.W.3d
89, 902 (Tex.Crim.App. 2005).

 B. Consent

 The Fourth Amendment to the United States Constitution forbids
unreasonable searches and seizures by government officials. O'Hara v.
State, 27 S.W.3d 548, 550 (Tex.Crim.App. 2000) (citing Minnesota v.
Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)).[10]
Although warrantless searches are generally presumed to be
unreasonable, there are recognized exceptions. Wiede v. State, 214
S.W.3d 17, 24 (Tex.Crim.App. 2007) (citing Maryland v. Dyson, 517 U.S.
465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). A well-established
exception to the warrant and probable cause requirements of the Fourth
Amendment is a search based on consent. Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Reasor v.
State, 12 S.W.3d 813, 817 (Tex.Crim.App. 2000).

 To be valid, consent must be voluntary; Harrison v. State, 205
S.W.3d 549, 552 (Tex.Crim.App. 2006), and consent must come from
someone who has authority over the property. See Georgia v. Randolph,
547 U.S. 103, 106, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).[11] That
said, consideration of Fourth Amendment rights involves more than an
exercise in property law. Salpas v. State, 642 S.W.2d 71, 73
(Tex.App.--El Paso 1982, no pet.). See Chapman v. United States, 365
U.S. 610, 616-17, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). "'It is
unnecessary and ill-advised to import into the law surrounding the
constitutional right to be free from unreasonable searches and
seizures subtle distinctions . . . [in] . . . the body of private
property law,' and the Supreme Court [has] made it clear for a long
time that courts 'ought not bow to them in the fair administration of
criminal law.'" Spring v. State, 626 S.W.2d 37, 41 (Tex.Crim.App.
1981) (quoting Jones v. United States, 362 U.S. 257, 266-67, 80 S.Ct.
725, 4 L.Ed.2d 697 (1960)). "The ultimate criteria is whether there
was a violation of the claimant's legitimate or reasonable expectation
of privacy." Salpas, 642 S.W.2d at 73 (citing Rakas v. Illinois, 439
U.S. 128, 58 L.Ed.2d 387 (1978)).[12] "In making this determination,
property rights are relevant but are not the sole determinant." Id.
(citing United States v. Salvucci, 448 U.S. 83, 65 L.Ed.2d 619, 100
S.Ct. 2547 (1980). "[T]he Fourth Amendment protects people, not
places." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19
L.Ed.2d 576 (1967).

 Further, "[w]hen the police take possession of property that has
been abandoned independent of police misconduct, no seizure occurs
under the Fourth Amendment." Swearingen v. State, 101 S.W.3d 89, 101
(Tex.Crim.App. 2003). Abandonment of property occurs if: (1) the
defendant intended to abandon the property,[13] and (2) his decision
to abandon the property was not due to police misconduct. See McDuff
v. State, 939 S.W.2d 607, 616 (Tex.Crim.App. 1997). See also Brimage
v. State, 918 S.W.2d 466, 507 (Tex.Crim.App.) (op. on reh'g en banc),
cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 66 (1996).[14]
Moreover, when a defendant voluntarily abandons property, he lacks
standing to contest the reasonableness of the search of the abandoned
property. McDuff, 939 S.W.2d at 616.

 C. Analysis

 The dispositive issue here, and at the suppression hearing,
involves Peck's ability to lawfully consent to the warrantless search
of the storage shed. Whether consent is valid is a question of fact
to be determined from all the circumstances. Maxwell v. State, 73
S.W.3d 278, 281 (Tex.Crim.App. 2002) (citing Ohio v. Robinette, 519
U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).

 At the suppression hearing, Peck testified that he rented a
house to Appellant and Orosco on February 16, 2008, pursuant to an
Agreement. The tenancy was a month-to-month tenancy beginning on the
16th of each month. The Agreement also provided that, if at any time
during the lease the premises were abandoned, Peck had the option to
re-enter the premises and consider any personal property belonging to
the tenants, that remained, as abandoned property to be disposed in
any manner Peck deemed proper.

 Prior to the rent being due for the month running from August 16
to September 16, Peck received a call from Orosco indicating that she
and Appellant were moving out on August 16 because they had bought a
house. No one made any rent payments after the call and there is no
evidence there were any further communication between either Appellant
or Orosco and Peck. When Peck entered the house on August 21, he
found partial pieces of splintered furniture and trash bags filled
with garbage. There was no food or clothing in the house--no evidence
anyone was living there.[15]

 Under these circumstances, the trial court could reasonably find
that Appellant had voluntarily abandoned the house and Peck was
authorized to act pursuant to the Agreement's provision related to
abandonment. The Court of Criminal Appeals decision in Swearingen,
supra, is particularly instructive. In Swearingen, the defendant and
his wife agreed to live with his parents and notified their landlord
on December 24, 1998, that they had to move. On January 6, 1999,
Officer Mock went to the rental property and discovered the landlord
had just cleaned the rent trailer out in order to rent it to another
party. The landlord showed Officer Mock where he had thrown out the
trash and the officer discovered evidence incriminating the defendant
in a crime. The Swearingen Court held that the incriminating evidence
was admissible at trial because defendant had abandoned his trailer
prior to January 6, 1999, and lacked standing to complain about any
search of the rent trailer or the trash removed from the trailer on
that date. Id. at 101.

 Because Appellant vacated the premises and ceased paying rent,
we also find Appellant abandoned the rental house prior to August 21
and, under the lease, Peck was authorized to re-enter the house and
storage shed, dispose of the contents, and consent to a search of the
premises by the police. Vacating the premises coupled with cessation
of rent payments constitutes abandonment. See Lucky v. Fidelity Union
Life Insurance Company, 339 S.W.2d 956, 959 (Tex.Civ.App.--Dallas
1960, no writ).

 The trial court did not abuse its discretion in denying
Appellant's motion because Appellant had no standing to challenge the
search.[16] On August 21, Appellant had no possessory interest in the
rent property--notice was given that Appellant was vacating the
premises, Appellant vacated the premises, and no rent had been paid
for the tenancy period of August 16 through September 16.

 Appellant contends that his tenancy did not terminate until
September 2 because his landlord did not give Appellant thirty days
notice prior to terminating the Agreement. Appellant asserts that,
because the Agreement was governed by the Texas Property Code, more
specifically section 91.001, he was due thirty days notice before any
termination by his landlord could take place. See Tex. Prop. Code
Ann. § 91.001(a), (b) (Vernon 2007). However, here, Orosco gave Peck
notice that they would be moving out on August 16 and would not, and
in fact did not, pay any rent thereafter. Prior to August 21 when he
re-entered the property, there is no evidence of record that Peck took
any steps to terminate the Agreement or otherwise bring the Agreement
to a premature end. Rather, the record supports the premise that,
because Appellant vacated the premises without paying any further
rent, Appellant abandoned the premises. See Lucky, 339 S.W.2d at 959.
[17] Accordingly, Appellant's second issue is overruled.

 III. Jury Instruction

 A. Standard of Review

 When reviewing the record for jury charge error, we must first
determine whether error actually occurred and, if so, whether
sufficient harm resulted from the error to require reversal of the
conviction. Rodriguez v. State, 239 S.W.3d 277, 280 (Tex.App.--
Amarillo 2007, no pet.) (citing Hutch v. State, 922 S.W.2d 166, 170-71
(Tex.Crim.App. 1996).

 B. Article 38.23 Instruction

 Article 38.23 prohibits the use of any evidence against an
accused in a criminal trial if the evidence "was obtained by an
officer or other person in violation of any Texas state or federal law
including the Texas and United States Constitutions. Article
38.23(a). Further, article 38.23 provides that, if the evidence at
the criminal trial raises an issue whether certain evidence was
obtained in violation of state or federal law, the jury shall be
instructed to disregard the evidence if it "believes, or has a
reasonable doubt, that the evidence was obtained in violation of
[Article 38.23]." Id.

 Appellant urges he was entitled to such an instruction because
there was a factual issue whether Appellant had abandoned the rental
property and, consequently, whether Peck had authority to permit law
enforcement officers to search the premises including the storage
shed. A jury instruction under article 38.23 is required only when
there is a factual dispute concerning the legality of the seizure of
evidence. Garza v. State, 126 S.W.3d 79, 85 (Tex.Crim.App. 2004);
Rodriguez, 239 S.W.3d at 280. Accordingly, we must first determine
whether there was a factual issue requiring an article 38.23
instruction.

 In support, Appellant asserts the following evidence raised such
a fact issue: (1) there was a substantial amount of personal property
left in the storage shed; (2) the storage shed had been fortified with
a new deadbolt lock; (3) there was a car parked at the house; and (4)
Appellant was later billed for three weeks rent after he moved out of
the rent house.

 Asserting that Appellant did not abandon the rental property
because he left personal property in the storage shed after moving out
of the house begs the question whether the rental property was
abandoned. Further, that Appellant may have fortified the shed door
with a deadbolt lock to protect his personal property is not evidence
Appellant did not intend to abandon the rental property. Appellant
vacated the premises and ceased paying rent. At that point, Appellant
no longer had any leasehold interest in the rental property[18] and,
under the terms of the lease, Peck "[could] consider any personal
property belonging to [Appellant] and left on the Premises to also
have been abandoned." In addition, when he vacated the premises, he
left a key to the deadbolt in the rent house which the landlord found
on re-entry. Leaving a key to the shed in the rent house after
vacating the premises is consistent with an intent to abandon the
premises as well as the personal property in the shed. Although there
was a car parked at the residence, the record reflects that Peck did
not recognize the vehicle and believed that it too had been abandoned.
 There was no evidence of record regarding the vehicle's ownership or
how long it had been parked on the premises.

 Finally, the evidence at trial does not support Appellant's
assertion that he was billed for an additional three weeks rent
entitling him to possession of the rental property after August 16.
Rather, Peck's testimony at trial indicates he deducted three weeks
rent from Appellant's deposit as a penalty for abandoning the premises
without giving thirty days notice of termination as required by the
Agreement. Thus, while Appellant may contest the legal effect of his
actions, there was not a factual dispute presented with respect to
those actions.

 Having found no factual dispute, the trial court did not err in
rejecting Appellant's proposed jury instruction. We overrule
Appellant's third issue.

 Conclusion

 The trial court’s judgment is affirmed.

 Patrick A. Pirtle
 Justice
Do not publish.

-----------------------
[1]See Tex. Health & Safety Code Ann. § 481.115(d) (Vernon 2010).
Although Appellant was originally charged with the offense of
possession of a controlled substance with intent to deliver, Tex.
Health & Safety Code Ann. § 481.112(d), the jury found him guilty of
this lesser included offense.

[2]See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).
Hereinafter, all provisions of the Texas Code of Criminal Procedure
will simply be cited as "article ___" or "art. ___."

[3]In this proceeding, the State did not file a brief nor request
additional time to do so. Accordingly, we have conducted an
independent analysis of the merits of Appellant's claim of error,
limited to the arguments raised at trial by the State, to determine if
there was error. See Little v. State, 246 S.W.3d 391, 397-98
(Tex.App.--Amarillo 2008, no pet.). The decision to independently
review the merits of Appellant's issues should not be construed as an
approval of the State's failure to file a brief. See Tex. Code Crim.
Proc. Ann. art. 2.01 (Vernon 2005) ("Each district attorney shall
represent the State in all criminal cases in the district courts of
his district and appeals therefrom . . . .") Although the State is
not required to file a brief, the failure to do so requires this Court
to expend valuable judicial resources to determine the parameters of
the arguments presented to this Court for consideration.

[4]The Agreement provided that "[a]ny notice to terminate this tenancy
must comply with the Act." Paragraph 28 of the Agreement states,
"[i]f there is a conflict between any provision of this Lease and the
applicable legislation of the State of Texas (the 'Act'), the Act will
prevail and such provisions of the Lease will be amended or deleted as
necessary in order to comply with the Act." Appellant asserts that
"the Act" refers to those provisions of the Texas Property Code that
are applicable. The State, having filed no response, has made no
objection. Accordingly, for purposes of this opinion, we accept
Appellant's interpretation of this term of the Agreement.

[5]The Agreement contained the following provision, in pertinent part:

 25. Abandonment. If any time during the term of this Lease, the
 Tenant abandons the Premises or any part of the Premises, the
 Landlord may, at its option, enter the Premises by any means
 without being liable for any prosecution for such entering, and
 without becoming liable to the Tenant for damages or for any kind
 of payment of any kind whatsoever, and may, at the Landlord's
 discretion, as agent for the Tenant, rent the Premises . . . for
 the whole or any part of the then unexpired term, and may receive
 and collect all rent payable by virtue of such renting. . . . If
 the Landlord's right of re-entry is exercised following
 abandonment of the premises by the Tenant, then the Landlord may
 consider any personal property belonging to the Tenant and left
 on the Premises to also have been abandoned, in which case the
 Landlord may dispose of all such personal property in any manner
 the Landlord will deem proper and is relieved of all liability
 for doing so.

[6]Appellant asserts the rent was not due on any particular day of the
month because Appellant's copy of the Agreement did not expressly
state that the lease ran from the 16th to the 16th of each month.
However, the Agreement was signed February 16 and stated "the Lease is
a periodic tenancy commencing at 12:00 noon on and continuing on a
month-to-month basis," Peck's copy of the Agreement indicated that the
rent was due on the 16th of each month, Appellant paid his rent on the
16th of each month, receipts issued by Peck to Appellant were for a
one month period--16th to 16th, Peck testified the tenancy ran from
the 16th to the 16th of each month, and Orosco testified that their
rent was due on the 16th of each month. Despite Appellant's
assertion, all the evidence at trial indicated the parties agreed the
rent was due on the 16th of each month and the month-to-month tenancy
ran from the 16th to the 16th of each month.

[7]Article 38.23, termed the "Texas exclusionary rule," generally
prohibits the admission of any evidence during a criminal trial that
was obtained by a law enforcement officer in violation of the laws of
Texas, and provides that in "any case where the legal evidence raises
an issue hereunder, the jury shall be instructed that if it believes,
or has a reasonable doubt, that the evidence was obtained in violation
of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained." Article 38.23(a).

[8]While we are not bound by a plurality decision, Pearson v. State,
994 S.W.2d 176, 177 n.3 (Tex.Crim.App. 1999), we read the combined
opinions of Judges Hervey and Cochran in Brooks as abandoning factual
sufficiency as an evidentiary sufficiency standard of review distinct
from legal sufficiency.

[9]The Court of Criminal Appeals has recognized that the term
(affirmative( adds nothing to the plain meaning of (link( and now uses
only the word (link( to evaluate evidence of possession. Evans v.
State, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).

[10] U.S. Const. amend. IV. See Tex. Const. art. I, § 9; article
38.23.

[11]It is a general rule that a landlord cannot normally give
effective consent to allow a search of a tenant's premises. McNairy
v. State, 835 S.W.2d 101, 105 (Tex.Crim.App. 1991) (citing Chapman v.
United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961)). It
cannot "be reasonably concluded that a tenant assumes a risk that his
landlord will consent to a government search of his home simply by
signing a lease." Id. See Spring v. State, 626 S.W.2d 37, 41
(Tex.Crim.App. 1981). "While a landlord has access to his tenant's
property for some purposes, he certainly does not have mutual access
and control for most purposes." Welch v. State, 93 S.W.3d 50, 54
(Tex.Crim.App. 2002).

[12]While the State has the burden to show that the person who
consented to the search had actual or apparent authority to consent;
Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d
148 (1990); Malone v. State, 163 S.W.3d 785, 797-98 (Tex.App.--
Texarkana 2005, pet. ref'd), the defendant bears the burden of
establishing that he had a subjective expectation of privacy that
society is prepared to recognize as reasonable. Granados v. State, 85
S.W.3d 217, 223 (Tex.Crim.App. 2002). See Dawson v. State, 868 S.W.2d
363, 370 (Tex.App.--Dallas 1993, pet. ref'd).

[13]"Intent may be inferred from circumstantial evidence such as acts,
words, and the conduct of appellant." Guevara v. State, 152 S.W.3d
45, 50 (Tex.Crim.App. 2004) (citing Patrick v. State, 906 S.W.2d 481,
487 (Tex.Crim.App. 1995)).

[14] Appellant makes no assertion that any decision to abandon his
property was due to police misconduct.

[15]Appellant and Orosco executed the Agreement as joint tenants. The
Agreement provided that "[w]here there is more than one Tenant
executing this Lease, all Tenants are jointly and severably liable for
each other's acts, omissions and liabilities pursuant to this Lease."
 Although, technically, "under Texas law, 'each owner in a co-tenancy
acts for himself and no one is agent of another or has any authority
to bind him merely because of the relationship'"; Brockelmann v.
Marynick, 788 S.W.2d 569, 572 (Tex. 1990), the trial court could
reasonably infer that Orosco's notice also encompassed Appellant
because all of the evidence at the hearing indicated Appellant and
Orosco vacated the premises at or about the same time prior to Peck's
inspection on August 21 and no further rent payments were made.

[16]See Salpas v. State, 642 S.W.2d 71, 73 (Tex.App.--El Paso 1982, no
pet.) (where landlord took possession due to default in rent payments,
subsequent entry by police with landlord's permission did not violate
tenant's expectation of privacy). See also Brimage, 918 S.W.2d at 507
(defendant failed to establish standing to object to a search of his
hotel room and contents when his suitcase was found in his hotel room
after check-out time and defendant had paid for a one night stay);
Bass v. State, 713 S.W.2d 782, 786 (Tex.App.--Houston [14th Dist.]
1986, no pet.) (where hotel operator took possession of a guest's
luggage after he failed to pay his bill, held guest had no standing to
challenge search); Ferris v. State, 640 S.W.2d 636, 638 (Tex.App.--El
Paso 1982, pet. ref'd) (failure of tenant of rental storage locker to
pay the rental price gave landlord the right to enter and consent to
search of storage locker by police).

[17]The result is the same whether or not Orosco spoke for Appellant
when she informed Peck the two were moving out. If not, then
Appellant vacated the premises and ceased paying rent with no notice.
The result is also the same whether Appellant's act of vacating the
premises and cessation of rent is viewed as "abandonment" or
"termination." "Under Texas law, if the tenant vacates the premises
and the landlord accepts possession, then an implied agreement to
terminate the lease has been established." In re Perry, 411 B.R. 368,
375 (Bankr. S.D.Tex. 2009). Here, Peck re-entered the premises,
cleaned out the house, and placed its contents in or near the dumpster
in the alley--acts consistent with the notion that he was exercising
his rights under the Agreement and had regained possession of the
premises after Appellant vacated and was no longer paying rent.
Appellant's citation to M.L.C. Loan Corp. v. P.K. Foods, Inc., 541
S.W.2d 902 (Tex.Civ.App.--Beaumont 1976, no writ), is of no avail. In
M.L.C. Loan Corp., the tenant attempted to make a full rent payment
within a grace period offered by the landlord but the landlord refused
the payment and declared the property abandoned before the grace
period had expired. Id. at 903. M.L.C. Loan Corp. is inapposite
because, here, the landlord received notice Appellant was vacating the
leased premises, Appellant vacated the premises, Peck offered no grace
period and Appellant neither offered nor paid any further rent after
August 21.

[18]Under Texas property law, had Appellant continued to pay his rent
after Orosco had given notice that they were moving and he vacated the
premises, he would have made an election to exercise an implied option
to renew his Agreement. Pratt v. Dallas County, 531 S.W.2d 904, 905
(Tex.App.--Waco 1975, writ ref'd n.r.e.). Appellant's Agreement did
not call for a formal notice to renew, thus his Agreement was
impliedly renewed when he paid the rent for the next month and the
landlord accepted the rent payment. See id. At that point, under the
terms of his Agreement, Appellant would have been entitled to thirty
days notice before Peck could terminate the leasehold. In a month-to-
month lease such as Appellant's, either party to the lease is
authorized to terminate the lease for any reason upon one month's
notice. Struve v. Park Place Apartments, 923 S.W.2d 50, 52 (Tex.App.--
Tyler 1995, pet. denied).